IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY WILLIAM HALLFORD,

       Plaintiff,             No. CIV S-06-1081 GEB GGH P

   vs.

CALIFORNIA CORRECTIONAL
PEACE OFFICERS ASSOCIATION,
EACH INDIVIDUAL MEMBER, et al.,

       Defendants.         <u>ORDER</u>

_____/

       Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief pursuant to 42 U.S.C. § 1983. By <u>Order</u>, filed on October 31, 2006, plaintiff's original complaint was dismissed with leave granted to file an amended complaint. Plaintiff was granted two extensions of time, by <u>Orders</u>, filed on November 20, 2006, and on December 20, 2006, to file an amended complaint.[1] Plaintiff's amended complaint, filed on January 9, 2007, has failed to cure the defects of the original complaint. Plaintiff filed a motion for leave to file a second amended complaint, filed on July 19, 2007, which was not accompanied by a proposed second amended complaint, which will be denied.

---

[1] Plaintiff's third request for an extension of time was denied by <u>Order</u>, filed on January 9, 2007.

1   As plaintiff has been previously informed, the court is required to screen

2   complaints brought by prisoners seeking relief against a governmental entity or officer or

3   employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint

4   or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that

5   fail to state a claim upon which relief may be granted, or that seek monetary relief from a

6   defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

7   A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

8   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

9   (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

10  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

11  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

12  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

13  Cir. 1989); Franklin, 745 F.2d at 1227.

14  A complaint, or portion thereof, should only be dismissed for failure to state a

15  claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set

16  of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King &

17  Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also

18  Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing

19  a complaint under this standard, the court must accept as true the allegations of the complaint in

20  question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the

21  pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.

22  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

23  The portion of plaintiff's amended complaint that is electronically filed consists of

24  nearly 200 pages: 110 pages of allegations plus some 80 pages of exhibits.  In addition, plaintiff

25  filed, as part of his amended complaint, a number of additional exhibits, maintained in paper in

26  expando files, which consist of some 46 separate State of California Auditor Reports of Improper

Governmental Activities, including auditor reports of the California Department of Corrections and Rehabilitation (CDCR), from the years 1995 through 2006; a conservative estimate would put the volume of this material at no less than 1500 additional pages.

Subsequent to the filing of the extraordinarily voluminous amended complaint and its attendant exhibits, plaintiff has filed no less than twenty (20) separate addenda to the amended complaint, primarily in the form of more exhibits, sometimes in the form of corrections[2] (docket entries 42 through 46, 48 through 58, 60 through 66, 68).  The court could simply strike this amended complaint as wholly violative of Fed. R. Civ. P. 8, but will proceed to screen the allegations.

Plaintiff still purports to sue "each individual member of the California Correctional Peace Officers Association," (CCPOA), in their personal capacities."  He includes "all current, former, and future members of CCPOA."   He also states that he is "suing every other person" employed by the CDCR "in any capacity," as well as "others," signifying anyone who benefits financially from the "corrupt actions of the CCPOA," including private contractors and "'approved vendors.'" Plaintiff alleges that the CCPOA is a "continuing criminal enterprise," which must be investigated by federal authorities for RICO[3] violations.  He claims to have been denied unspecified documents under the Freedom of Information Act which he asks that the court subpoena.    Amended Complaint (AC), pp. 1-4.

In addition to suing under Article VI, Section 2 of the federal constitution, plaintiff generically alleges violations of the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Thirteenth and Fourteenth Amendments.  Plaintiff claims that CCPOA, CDCR and others, "routinely violate innumerable federal laws," inter alia, the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the Religious Land Use and Institutionalized Persons Act

---

[2] "Notice of Errata," filed on April 11, 2007.

[3]  Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

of 2000 (RLUIPA), the Prison Litigation Reform Act of 1995 (PLRA), as well as various, unspecified international agreements.  Although he concedes that these alleged violations "may not appear to have direct effect upon plaintiff, the additional stress, strain and removal of credibility, creates an increased threat of the plaintiff being physically assaulted as a result of flawed policy orchestrated by the actions of defendants."  AC, p. 5.

As to purported First Amendment violations, plaintiff states that he already has a case, CIV S-05-0573 FCD DAD P, pending "covering a small portion of this violation, specifically addressing the denial of a religious diet.  Plaintiff goes on to state that "there appears to be a conspicuous attempt at [sic] violating the rights of 'minority religions' [sic]."  Plaintiff states that he is a Buddhist/Humanist, serving on his yard's Religious Advisory Committee.  Imam Abdul Nasir, already named as a defendant in the other action mentioned above, rarely facilitates chapel access during chapel time; nor does he use the public address system to announce meetings, or communicate with the Buddhist Community concerning his absences and schedule changes.  Plaintiff has filed "innumerable grievances," but the problem has not been addressed or remedied.   Plaintiff complains that those of "non-traditional" faiths are routinely denied appropriate access or diets or foreign language reading material. AC, pp. 6-7.

Plaintiff has previously been cautioned that he has no standing to bring any claim on behalf of anyone but himself.  Halet v. Wend Inv. Co., 672 F.2d 1305, 1308 (9th Cir. 1982) (party must assert [his] own rights not those of third parties), citing Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634 (1978); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205 (1974).  Plaintiff concedes that he already has a complaint pending with regard to his alleged dietary requirements.  His claims with regard to the Imam's accessibility here are vague and general; his comments concerning those of "non-traditional" faiths are even more tenuous.  These claims will be dismissed.

Under RLUIPA, the plaintiff makes broad ranging claims that he is subjected to "unnecessary stress and psychological turmoil" by the "retaliatory method" in which court

1    rulings pursuant to this statute are purportedly subverted.  He provides as an example his action

2    regarding access to a religious diet.  In another broad claim, ignoring the court's admonishment

3    as to his lack of standing to assert the rights of third parties, plaintiff claims that Chaplain Specht,

4    Father Stevenson, Rabbi Sudra, and Imam Nasir routinely violate the rights of those who seek

5    religious diets.  AC, p. 8.

6            Plaintiff has conceded that he is already litigating his own denial of religious diet

7    claim and may not duplicatively litigate the same claim herein.  Plaintiff also continues to make

8    broad and generic claims that the rights of members of his faith are violated by threatened

9    disciplinary action when they congregate.  AC, p. 9.  Plaintiff, however, wholly fails set forth a

10   specific instance of such occurrence or name a defendant with regard to such action against

11   himself.

12           Plaintiff complains of being treated "in a rude, condemnatory manner," when he

13   asked a Lieutenant Neede about contacting outside groups to obtain a volunteer for spiritual

14   guidance, which resulted in plaintiff's grievances being filed against Neede.  AC, pp. 9-10.

15   Plaintiff does not clarify how such action could be construed as resulting in a constitutional

16   deprivation as to him.

17           Plaintiff makes a generic claim that on unidentified occasions, unnamed mailroom

18   staff has taken the liberty of denying religious texts written in foreign languages to inmates,

19   provided by unspecified outside organizations, about which he has evidently complained to

20   various embassies.  AC, pp. 10-11.  Plaintiff finds such actions on the part of staff

21   "disrespectful," but again does not allege how he, himself, has been thereby deprived of a

22   constitutional right.

23           Plaintiff claims that his right to freedom of speech under the First Amendment has

24   been inhibited because incoming mail from non-legal sources has been delayed (at one time for

25   six to eight weeks) or denied.  Plaintiff claims to have been published in numerous publications

26   across the U.S., India, and possibly in Canada and Singapore.  Plaintiff has filed grievances, but

1   has been dissatisfied with responses from the mailroom indicating that it is understaffed.

2   Plaintiff brought his concerns to the Postmaster General's attention, who told plaintiff the post

3   office's authority was at an end within the prison; nevertheless, almost immediately, incoming

4   mail was received within less than a week from the postmark date.  AC, pp. 12-13.  Plaintiff

5   appears to have rectified any problem.  To the extent he seeks to sue for past delayed, denied or

6   destroyed mail, plaintiff must provide names of individual defendants responsible for such

7   alleged conduct and provide more specific information as to when the actions occurred and as to

8   what publications.  These allegations will be dismissed with leave to amend one final time.

9          While plaintiff states that he does receive foreign language newspapers in Hindi

10  and French, he complains that he and other inmates are denied some books sent from religious

11  groups outside the United States.  Averring that this conduct is endemic throughout CDCR,

12  plaintiff avers that "guilt in this matter is easily spread among the parties noted on Exhibit B,

13  Captain M.D. Miles; Mary P (actual last name unknown); A. Allen, and the Appeals

14  Coordinators Cervantes, Corioso, and the Appeals Staff in Sacramento, led by N. Grannis."  AC,

15  pp. 13-14.

16         Plaintiff was informed, inter alia, in the 10/31/06 Order that prisoners do not have

17  a "separate constitutional entitlement to a specific prison grievance procedure."  Ramirez v.

18  Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir.

19  1988).  Plaintiff's allegations against appeal staff will be dismissed.  As to his references to

20  exhibits, while exhibits generally may be attached to complaints, they are not a substitute for

21  substantive allegations which much be contained within the body of the complaint.  Plaintiff's

22  generic claims that he and others have been denied unidentified religious texts from foreign

23  countries at some unspecified time will be dismissed, those on behalf of others because plaintiff

24  lacks standing, those on behalf of himself because the allegation is not adequately alleged.

25         Plaintiff brings a wholly implausible allegation of a denial of his "First

26  Amendment right to peaceably assemble," when he does not even allege that there is such a

1   problem (or such a right in the prison context) where he is currently incarcerated.  This claim

2   will be dismissed.

3              As to claimed violations of the First Amendment right to petition the government

4   for redress of grievances, plaintiff engages in a lengthy complaint about a grievance of his at

5   some point in the past that took some 217 days before he received a response.  He once,

6   inexplicably, submitted a grievance in "rudimentary French."   He lists a number of staff to

7   whom grievances have been submitted, about which he makes broad allegations about the

8   deficiencies of the grievance procedure.  He complains about a policy which at one point sent

9   medical appeals to non-licensed staff, but which has been altered to route medical appeals to a

10   medical appeals coordinator; he gives an instance of his own life allegedly being put at risk by

11   being given a lowered dosage of seizure medication, after which he suffered a grand mal seizure.

12   Plaintiff does not make a claim of inadequate medical care at this point, but seeks to implicate

13   the grievance process.  AC, pp. 15-21.  These allegations will be dismissed with leave to amend.

14              Because the allegations of this complaint continue to meander along the lines of

15   generic grievances against prison staff broadly and the prison system in general, it is evident to

16   the court that plaintiff's fundamental problem in this action is that he does not take to heart the

17   court's admonition that his allegations will proceed only to the extent that he sets forth specific

18   constitutional deprivations to which he has been subjected, naming specific defendants and

19   linking their conduct to such deprivations.   To the extent that plaintiff sets forth any deprivation

20   touching upon himself, he does so in a manner to indicate that it is merely an illustrative example

21   of the type of conduct for which he seeks to implicate all of CDCR employees, CCPOA, etc.  He

22   continues to assert the rights of parties for which he has no standing.

23              In his allegations of Fourth Amendment violations, plaintiff unfolds the story of a

24   mentally handicapped inmate's having had canceled stamps removed as contraband from a

25   world-traveling sister's correspondence to the inmate.  Plaintiff sought to assist the inmate but

26   received contradictory responses in the grievance process.  Plaintiff is aggrieved at the loss of the

1   canceled stamps, but does not state that the inmate did not receive the letter, nor does he make

2   clear how stamps which were canceled could have facilitated the inmate's future family

3   correspondence.  AC, pp. 22-23.  More fundamentally, of course, plaintiff is positing the

4   problems of another as a basis for his own lawsuit.  Plaintiff appears to regard himself as the self-

5   appointed representative for every inmate:

6              Plaintiff can easily obtain documentation regarding seized property
            from virtually every other inmate, and would propose sending a
7              "questionnaire" to each inmate in a variety of different institutions,
            to provide documentation of their own problems.

8

9   AC, p. 24.

10              Plaintiff appears to be attempting to bring a class action without so specifying.  To

11   the extent plaintiff appears to be seeking to bring a class action suit, plaintiff has made no motion

12   pursuant to Fed. R. Civ. P. 23, seeking to have the court certify the instant matter as a class

13   action.  Moreover, plaintiff is a non-lawyer proceeding without counsel.  It is well established

14   that a layperson cannot ordinarily represent the interests of a class.  See McShane v. United

15   States, 366 F.2d 286 (9th Cir. 1966).  This rule becomes almost absolute when, as here, the

16   putative class representative is incarcerated and proceeding pro se.  Oxendine v. Williams, 509

17   F.2d 1405, 1407 (4th Cir. 1975).  In direct terms, plaintiff cannot "fairly and adequately protect

18   the interests of the class," as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure.

19   See Martin v. Middendorf, 420 F. Supp. 779 (D.D.C. 1976).  Plaintiff's privilege to appear in

20   propria persona is a "privilege ... personal to him.  He has no authority to appear as an attorney

21   for others than himself."  McShane v. U. S., 366 F.2d 286, 288 (9th Cir.1966), citing Russell

22   v.United States, 308 F.2d 78, 79 (9th Cir. 1962); Collins v. O'Brien, 93 U.S.App.D.C. 152, 208

23   F.2d 44, 45 (1953), cert. denied, 347 U.S. 944, 74 S.Ct. 640 (1954).

24              To the extent plaintiff attempts to make any claim regarding the Fourth

25   Amendment as to himself, he complains that, upon his arrival at San Quentin (presumably upon

26   first being committed to state prison), certain of his personal property was destroyed, rather than

8

sent home. Ac, pp. 22.  More recently, plaintiff complains that certain unspecified documents of him inexplicably disappear.  He alleges that unnamed staff regularly snoop around, although he has never witnessed this occurring as to himself.  He appears to imply that some documents go missing because he is acting to protect his civil rights, and "[n]early the entire prison population..." is aware that he is working in the interest of "every inmate."  AC, pp. 24-25.

Plaintiff is advised that the United States Supreme Court has long determined "that prisoners have no legitimate expectation of privacy, and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cell...."  Hudson v. Palmer, 468 U.S. 517, 530, 104 S. Ct. 3194 (1984).  It may be that plaintiff intends to allege that he was wrongfully deprived of his certain personal property when he was first incarcerated, but again this appears to be one of plaintiff's examples to demonstrate policies and procedures he seeks to implicate generically, rather than a specific claim he intends to bring.

To the extent he may intend to bring a claim of retaliation (a First Amendment, not a Fourth Amendment, claim) for the filing of civil rights actions in the form of the "disappearance" of some of his documents against unnamed individuals, it is the case that retaliation by prison officials for the exercise of a prisoner's constitutional right of access to the courts violates the federal constitution.  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

In order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989); Rizzo 778 F.2d at 532.  The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v.

1  Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  However, even threats of bodily injury are

2  insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act

3  itself.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical

4  retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of

5  the exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n.1)

6  (10th Cir. 1990).

7            In Pratt, the Ninth Circuit concluded that in evaluating retaliation claims, courts

8  should defer "to prison officials in the evaluation of proffered legitimate penological reasons for

9  conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (citing Sandin v. Conner, 515 U.S. 472,

10 115 S. Ct. 2293 (1995)).  In this case, plaintiff is not sufficiently clear that he intends to bring a

11 claim of retaliation as to the allegedly missing documents and in any event provides too little

12 information to have framed such a claim.

13           Plaintiff's overbroad and inapposite claims under the Fifth, Sixth and Seventh

14 Amendment are either insufficiently alleged or lack any colorable basis and will be dismissed.

15 AC, pp. 26 - 37.

16           In addressing alleged violations of the Eighth Amendment, plaintiff lists a number

17 of claimed incidents of inadequate medical care, but again, even as they relate to himself, he does

18 not appear to be alleging them as particular claims, having named no specific individual

19 defendants, upon which he elects to proceed, but only as examples of what he appears to be

20 condemning as constitutionally defective prison medical care conditions.  He refers to incidents

21 in April, 2004 and July, 2006, when he has had seizure medication in some way improperly

22 administered, thus subjecting him to grand mal seizures.  He believes the denial of medication

23 was an attempt on his life to intimidate him into dropping this action.  Plaintiff refers to an

24 incident in CSP-Corcoran at some point, where he was transported to see a staff psychiatrist in an

25 undignified manner.  In March, 2004, plaintiff was assaulted in his cell and sustained injuries,

26 causing him to lose eight teeth.  The incident occurred after plaintiff had told the unnamed duty

officer that he wanted to move due to problems with an assigned cellmate.  Plaintiff complains about the dental treatment he received but names no individual defendant.  He still suffers from pain in a wisdom tooth, which dental staff have refused to remove.  AC, pp. 38-43.

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Indications that a prisoner has a serious need for medical treatment are the following:  the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

1   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

2          It is nothing less than recklessness in the criminal sense – subjective standard –

3   disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

4   1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

5   that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

6   114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

7   of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

8   847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

9   knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

10   obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

11   1981.  However, obviousness per se will not impart knowledge as a matter of law.

12          Also significant to the analysis is the well established principle that mere

13   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

14   Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

15   662 F.2d 1337, 1344 (9th Cir. 1981).

16          Moreover, a physician need not fail to treat an inmate altogether in order to violate

17   that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

18   1989).  A failure to competently treat a serious medical condition, even if some treatment is

19   prescribed, may constitute deliberate indifference in a particular case.  Id.

20          Additionally, mere delay in medical treatment without more is insufficient to state

21   a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

22   F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

23   no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

24   Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

25   1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

26   to provide additional support for a claim of deliberate indifference; however, it does not end the

inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." <u>McGuckin</u>, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. <u>Hutchinson v. United States</u>, 838 F.2d 390 (9th Cir. 1988).  While plaintiff has made colorable allegations of inadequate medical care, he has not linked them to specific named defendants.  These claims will be dismissed with leave to amend.  Plaintiff once again appears to be setting forth a litany of alleged incidents to help form a background for this action to seek to implicate the policies and practices of the entire CDCR system, rather than frame specific claims. This is rendered evident by his again recounting an instance of another inmate who evidently received a delayed diagnosis of Hepatitis C, an inmate ironically who declines to be identified because he already has an action pending as to these allegations.  AC, p. 44.  Plaintiff goes on to describe various examples of other inmates not having received adequate medical attention, all claims plaintiff has no standing to bring.

Plaintiff also refers to other instances of Eighth Amendment violations, not involving himself, in the form of excessive force or other alleged forms of cruel and unusual punishment, generally bemoaning the horrific conditions of prison life he has witnessed or heard about.  AC, pp. 45-48.  Plaintiff provides an excerpt from the <u>Journal of Prisoners on Prisons</u>, describing the death of an inadequately medically treated inmate in a women's California prison facility.  AC, pp. 49-50.

Plaintiff then embarks on a philosophical disquisition on, inter alia, the inequities of prison life, involving alleged violations of the Ninth and Fourteenth Amendments and international treaties, invoking the Bible, the Magna Carta, Aristotle, Plato, Freud and Kant,

among other sources, philosophers, theologians, and other thinkers.  AC, pp. 51- 62.

A portion of plaintiff's amended complaint is hand-written and dated January 2, 2007.  Plaintiff states that he does not have access to a typewriter because he was assaulted by C/O Menendez to prevent plaintiff from accessing his religious diet, and placed in Ad Seg.  Plaintiff believes that Menendez was working under the direction of Captain Fry, Lieutenant Meeks, Sergeant Quiates, Warden Sisto, "et al.," but does not have proof.  AC, p. 63.  These allegations again do not appear to set forth for the purpose of proceeding against these individuals, perhaps in part because they could not then have been administratively exhausted and/or because plaintiff's religious diet claims are the subject of a prior, pending lawsuit.  Rather, plaintiff puts them forward as another example of misconduct of prison staff and by way of explanation for having to hand write the remainder of his amended complaint.

Plaintiff invokes the Thirteenth Amendment's prohibition of slavery and involuntary servitude to implicate the paucity of wages for prison jobs.  Plaintiff also states that at some point he was excused from a job when the strobe effect of a light had exacerbated his seizure disorder and stayed off work for six months.  He was eventually ordered, while apparently suffering from pneumonia, to return to work but did not, afterward receiving 90 days of unexcused absences from another officer, who is not named.  Plaintiff does not challenge the accuracy of his having been found not to have attended work for that 90-day period, but questions whether the same unidentified officer could have been on-duty for 90 straight days to sign off on each missed day.  AC, pp. 66-68.  Plaintiff is concerned that government documents must have thereby been falsified.  Plaintiff frames no claim here.

Plaintiff revisits claims against the grievance procedure, alleging Fourteenth Amendment due process violations, by delays and failures to process grievances.  AC, pp. 69-70.  As plaintiff has been previously informed, prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, supra, 334 F.3d at 860, citing Mann v. Adams, 855 F.2d at 640.  Even the non-existence of, or the failure of prison

1  officials to properly implement, an administrative appeals process within the prison system does

2  not raise constitutional concerns.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  See also,

3  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir.

4  1991).  Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure

5  is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it

6  does not give rise to a protected liberty interest requiring the procedural protections envisioned

7  by the fourteenth amendment").  Specifically, a failure to process a grievance does not state a

8  constitutional violation.  Buckley, supra.  State regulations give rise to a liberty interest protected

9  by the Due Process Clause of the federal constitution only if those regulations pertain to

10 "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation

11 to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293,

12 2300 (1995).[4]

13          Plaintiff makes an effort to implicate the Fourteenth Amendment's equal

14 protection clause by averring that the incident involving Menendez "might partially be" racially

15 motivated, but without providing adequate substance to support such a speculatively framed

16 claim. AC, p. 72.   Plaintiff then goes on to state that some officers will not speak to an inmate of

17 a different race, or are otherwise hostile.  He cites an example of Filipino prison staff at a kitchen

18 at CSP-Solano in 2003 -2004, who spoke only Tagalog to shut out inmates and other staff.

19 Plaintiff complains that Mexicans inmates are not provided completely accurate translations by

20 CCPOA, providing the example of an unnamed friend at a 115 hearing who speaks "adequate

21

22          [4]  "[W]e recognize that States may under certain circumstances create liberty interests which
23 are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107
    S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from
24 restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to
    protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493,
    100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494 U.S. 210, 221- 222,
25 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes
    atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
26 Sandin v. Conner, supra.

1    English," but nevertheless asked for an interpreter, who proceeded not to provide full and

2    accurate translations.  AC, p.74.  Whether or not this has occurred, plaintiff has not framed a

3    claim of an equal protection violation as to himself.

4               Plaintiff returns to complaining about his prison medical treatment, harking back

5    to 1995, when he evidently suffered a stroke, from which his seizure disorder evidently arose

6    with right side "neurological deficits."  Plaintiff states that he was unable to speak for the first six

7    months, and still has some difficulty with speech under stress.  He states that his eyesight is

8    deteriorating, which may be due to advanced age.  Plaintiff complains that he has made his

9    medical condition known and there is apparently information about it in facilities in Oregon,

10   Idaho, Colorado, as well as San Francisco County Jail.  CSP-Corcoran staff ignored such

11   information; at CSP-Solano, plaintiff was assigned to an upper bunk during the first year.  He

12   was not provided a lower bunk chrono until he had a grand mal seizure in April, 2004.  Plaintiff

13   then goes on to repeat allegations about having received less then his required dosage of

14   medication.  AC, pp. 78-79.  Plaintiff's claims as to inadequate medical care will be dismissed,

15   as set forth previously, but is granted leave to amend to frame such claims.  However, it is not

16   evident that plaintiff seeks to proceed on such claims with respect to specific named defendants.

17   Plaintiff contends that some of the medical staff are "dedicated professionals," but supervisory

18   staff is often deficient, providing patients with Hepatitis C with inappropriate medication, failing

19   to have standardized HIV testing, absent a request of a patient.  This failure results in "a public

20   health catastrophe," given the violence in prison, leading to the possibility of infection of others,

21   including plaintiff.   AC, pp. 79-80.  Once again, plaintiff has failed to frame a specific claim.

22              Plaintiff recounts a story of an inmate with multiple sclerosis whom plaintiff was

23   able to assist; he also complains of having some difficulty with obtaining proper medication for

24   himself, but contends that he has been successful in getting CDCR medical staff to treat the

25   neediest patients.  AC, p. 81.  He alleges that some of the oldest prisoners have the most difficult

26   time getting appropriate treatment, that some are going blind, or have mental health problems,

1   but are not receiving the standard of care required under the ADA.  AC, pp. 81-82.  These

2   generalized deficiencies cannot be resolved by plaintiff, who has no standing to sue, as has been

3   repeatedly stated, on anyone's behalf but his own in this lawsuit.

4           The remainder of plaintiff's amended complaint is a for most part a polemic,

5   largely repetitive (AC, pp. 83-102), about the dire conditions faced by prisoners generally, and

6   the court will not continue to summarize them.  Plaintiff characterizes his own allegations as a

7   "mind-numbingly all-inclusive attempt at justice."  AC, p. 93.  Plaintiff seeks money damages

8   and injunctive relief.

9           With respect to any claims of conspiracy, plaintiff has intended to make, he has

10  been previously informed that in order to do so, he must make some showing of an agreement or

11  a meeting of the minds on the part of specifically identified defendants to violate his

12  constitutional rights.  Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989),

13  citing Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983).  Conspiracy allegations must be supported by

14  material facts and not be merely conclusory statements.  Lockary v. Kayfetz, 587 F. Supp. 631

15  (N. D. Cal. 1984).  Moreover, plaintiff must show an actual deprivation of his constitutional

16  rights resulting from the alleged conspiracy.  Woodrum, supra, citing Singer v. Wadman, 595 F.

17  Supp. 188 (D. Utah 1982) ("conspiracy allegation, even if established, does not give rise to

18  liability under § 1983 unless there is an actual deprivation of civil rights").  Thus, once again, his

19  amorphously framed allegations regarding any conspiracy will be dismissed.

20          In addition, plaintiff has previously been advised that his efforts to implicate some

21  35,000 CCPOA members and some 20,000 additional state employees on the basis of any

22  inadequately alleged violations of criminal statutes cannot proceed in the context of a civil rights

23  action, and, in any event, plaintiff has no authority to commence a criminal investigation or

24  prosecution, even if he had provided more specific information.  Plaintiff's complaint will be

25  dismissed in its entirety but plaintiff will be granted leave to amend.

26  \\\\\

17

1    To the extent plaintiff seeks to bring his allegations pursuant to the RICO statutes,

2    RICO gives a private right of action to anyone injured in his business or property by a violation

3    of § 1962. 18 U.S.C. § 1964(c).  However, to the extent plaintiff is suing the state in suing the

4    CDCR and the CCPOA, RICO does not override a state's sovereign immunity under the

5    Eleventh Amendment.  Bair v. Krug, 853 F.2d 672, 674-75 (9th Cir. 1988).   Moreover, civil

6    rights violations do not fall within the statutory definition of racketeering activity.  Bowen v.

7    Oistead, 125 F.3d 800, 806 (9th Cir. 1997).  Plaintiff's RICO claims will be dismissed.  Plaintiff

8    has leave to amend.

9    Should plaintiff seek to file a third amended complaint, he will be required to

10   conform to the requirements of Fed. R. Civ. P. 8.  Complaints are required to set a forth (1) the

11   grounds upon which the court's jurisdiction rests, (2) a short and plain statement of the claim

12   showing entitlement to relief; and (3) a demand for the relief plaintiff seeks.  All that is required

13   are sufficient allegations to put defendants fairly on notice of the claims against them.  See

14   Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957);  5 C. Wright & A.

15   Miller, Federal Practice and Procedure § 1202 (2d ed. 1990).  Rule 8 requires "sufficient

16   allegations to put defendants fairly on notice of the claims against them."  McKeever v. Block,

17   932 F.2d 795, 798 (9th Cir. 1991)).  Accord Richmond v. Nationwide Cassel L.P., 52 F.3d 640,

18   645 (7th Cir. 1995) (amended complaint with vague and scanty allegations fails to satisfy the

19   notice requirement of  Rule 8.)

20   Even if the factual elements of the cause of action are present, but are scattered

21   throughout the complaint and are not organized into a "short and plain statement of the claim,"

22   dismissal for failure to satisfy Rule 8(a)(2) is proper.  McHenry v. Renne, 84 F.3d 1172, 1178

23   (9th Cir. 1996) (stating that a complaint should set forth "who is being sued, for what relief, and

24   on what theory, with enough detail to guide discovery" (emphasis added)).  A complaint that fails

25   to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to Fed. R. Civ. P.

26   41(b).  Rule 8; Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981)).  Further,

18

"[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit," McHenry 84 F.3d at 1179.

The amended complaint in this action, as did the original, illustrates the "unfair burdens" imposed by complaints, "prolix in evidentiary detail, yet without simplicity, conciseness and clarity" which "fail to perform the essential functions of a complaint." McHenry, 84 F.3d at 1179-80.

Plaintiff, in filing a third amended complaint will now be restricted to twenty (20) pages, including exhibits.  Should his allegations exceed this length, any third amended complaint will be stricken as violative of a court order, see Local Rule 11-110, and dismissal of this action will be recommended.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an

\\\\\\

1   original complaint, each claim and the involvement of each defendant must be sufficiently

2   alleged.

3           In accordance with the above, IT IS HEREBY ORDERED that:

4           1.  Plaintiff's July 19, 2007, motion to file a second amended complaint is denied

5   as defective;

6           2.  Plaintiff's first amended complaint is dismissed, for the reasons set forth

7   above, with leave to amend one final time;

8           3.  Plaintiff is granted one further opportunity to amend in the form of a third

9   amended complaint, not to exceed twenty pages, including exhibits, within thirty days; failure to

10  comply with this order will result in a recommendation of dismissal of this action, as set forth

11  above.

12  DATED: 10/18/07                          /s/ Gregory G. Hollows

13                                           _____
                                             GREGORY G. HOLLOWS
14                                           UNITED STATES MAGISTRATE JUDGE

    GGH:009
15  hall1081.scr

16

17

18

19

20

21

22

23

24

25

26